**NO. 23-50167**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

Children's Health Defense; Deborah L. Else; Sacha Dietrich; Aimee Villella
McBride; Jonathan Shour; Rebecca Shour,

Plaintiffs - Appellants

v.

Food & Drug Administration; Robert M. Califf,

Defendants - Appellees

**On Appeal from**
United States District Court for the Western District of Texas
The Honorable Judge Alan D Albright
No. 6:22-cv-00093-ADA

**BRIEF OF APPELLANTS CHILDREN'S HEALTH DEFENSE, SACHA
DIETRICH, DEBORAH ELSE, AIMEE MCBRIDE, JONATHAN SHOUR,
AND REBECCA SHOUR**

Respectfully submitted,

Robert E. Barnes
BARNES LAW
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: (310) 510-6211
Email: robertbarnes@barneslawllp.com

*Attorneys for Appellants*

i

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Robert Califf | Daniel Tenny of U.S. Department of Justice Washington, DC |
| Robert Califf | Sean Janda of U.S. Department of Justice Washington, DC |
| Robert Califf | James Harlow of U.S. Department of Justice Washington, DC |
| Food & Drug Administration | Daniel Tenny of U.S. Department of Justice Washington, DC |
| Food & Drug Administration | Sean Janda of U.S. Department of Justice Washington, DC |
| Food & Drug Administration | James Harlow of U.S. Department of Justice Washington, DC |

| Appellants: | Counsel for Appellants: |
|---|---|
| Children's Health Defense | Robert Barnes Los Angeles, CA |
| Sacha Dietrich | Robert Barnes Los Angeles, CA |
| Deborah Else | Robert Barnes Los Angeles, CA |
| Aimee McBride | Robert Barnes Los Angeles, CA |
| Jonathan Shour | Robert Barnes Los Angeles, CA |
| Rebecca Shour | Robert Barnes Los Angeles, CA |

S/Robert Edward Barnes
Attorney of record for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument because it will aid the decisional process in resolution of this appeal. Among other reasons, this appeal involves whether the dismissal of the entire action at the pleading stage, by the District Court below, should be reversed in an action that raises new, novel and important issues arising from the safety of COVID-19 vaccines imposed upon children and infants as young as 6 months old.

Amidst unprecedented governmental mandates, global shutdowns and unleashing of worldwide vaccination campaigns by central authorities, one would be hard pressed to present issues of more sweeping importance before this Court, than the ones offered by this appeal. Moreover, the astonishing fact that the response of governments worldwide to COVID-19, has had an historically profound global effect, renders little judicial authority guiding resolution of this appeal directly on point with the issues presented. For these reasons, Appellants submit that oral argument will aid in resolving what is likely to be a seminal decision over significant issues of first impression.

*/ / /*

# TABLE OF CONTENTS

**Contents:**                                                          **Page(s):**

CERTIFICATE OF INTERESTED PERSONS .......................................................ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS........................................................................................iv

TABLE OF AUTHORITIES ................................................................................. vi

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF THE ISSUES..............................................................................2

STATEMENT OF THE CASE.................................................................................2

SUMMARY OF THE ARGUMENT .......................................................................6

ARGUMENT ...........................................................................................................8

    I. STANDARD OF REVIEW …………………………………………..8

       A. *De Novo* Review Applies ………………………………………8

       B. The Allegations Of Appellants' Pleadings Are Assumed True For Purposes Of Reviewing Article III Standing …………………………8

    II. THE DISTRICT COURT ERRED IN FINDING THAT APPELLANTS' AMENDED COMPLAINT DID NOT SUFFICIENTLY ALLEGE ARTICLE III STANDING …………………………………………...9

       A. Appellants' Pleading Sufficiently Alleged Injury In Fact For Purposes Of Associational Standing …………………………………………..10

B. Appellants' Pleading Sufficiently Alleged Organizational Standing By CHD In Its Own Right ……………………………………………19

C. Appellants' Pleading Sufficiently Alleged A Statutory Violation Under The APA For Article III Standing Purposes …………………………25

CONCLUSION ........................................................................................28

CERTIFICATE OF SERVICE ................................................................29

CERTIFICATE OF COMPLIANCE .......................................................30

*///*

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s):**

*Animal Legal Def. Fund v. Azar,*

     No. 20-CV-03703-RS, 2021 WL 4477901 (N.D. Cal. Feb. 23, 2021) ……...13

*Baur v. Veneman,*

     352 F.3d 625 (2nd Cir. 2003) …………………………………………..12, 17-18

*Booth v. Bowser,*

     597 F. Supp. 3d 1 (D.D.C. 2022) ……………………………………10-12, 18

*Broadrick v. Oklahoma,*

     413 U.S. 601 (1973) …………………………………………………………..26

*Ctr. for Food Safety v. Price,*

     No. 17-CV-3833 (VSB), 2018 WL 4356730 (S.D.N.Y. Sept. 12, 2018) …...12

*Clapper v. Amnesty Int'l USA,*

     568 U.S. 398 (2013) …………………………………………………………..12

*Cutler v. Kennedy,*

     475 F.Supp. 838 (D.D.C.1979) ………………………………………13, 17

*El Rescate Leg. Srv., Inc. v. Ex. Off. of Imm. Rvw.,*

     959 F.2d 742 (9th Cir. 1991) ………………………………………19-20

*Gladstone Realtors v. Village of Bellwood,*

     441 U.S. 91 (1979) …………………………………………………………..9

*Havens Realty Corp. v. Coleman,*

     455 U.S. 363 (1982) ………………………………………………………19-20

*Hooker v. Weathers,*

 990 F.2d 913 (6th Cir. 1993) …………………………………………………..20

*Hunt v. Washington State Apple Adv. Comm'n,*

 432 U.S. 333 (1977) …………….......................................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*

 572 U.S. 118 (2014) .....................................................................................26

*Linda R.S. v. Richard D.*

 410 U.S. 614 (1973) …………………………………………………..25

*Lujan v. Defenders of Wildlife,*

 504 U.S. 555 (1992) …………………………………………………...8, 9, 10

*Massachusetts v. EPA,*

 549 U.S. 497 (2007) …………………………………………………..25

*Maya v. U.S. Dept. Homeland Security,*

 975 F.3d 120 (2nd Cir. 2020) ……………………………………………..21

*NAACP v. City of Kyle,*

 626 F.3d 233 (5th Cir. 2010) …………………………………………..24

*Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.,*

 455 F.3d 500, 502 (5th Cir. 2006) …………………………………………8

*New York Public Interest Research Group v. Whitman,*

 321 F.3d 316 (2nd Cir. 2003) …………………………………………..12, 17-18

*Online Merchants Guild v. Cameron,*

 995 F.3d 540 (6th Cir. April 29, 2021) ....................................................20-21

*Salmon Spawning & Recovery Alliance v. Gutierrez,*

 545 F.3d 1220 (9th Cir. 2008) …………………………………………25

*Sierra Club v. Marita,*

    46 F.3d 606 (7th Cir. 1995) ……………………………………………………21

*Spann v. Colonial Village, Inc.,*

    899 F.2d 24 (DC Cir. 1990) …………………………………………………...21

*Tummino v. Torti,*

    603 F.Supp.2d 519 (E.D.N.Y. 2009) ………………………………...12, 18

*United States v. $500,000.00 in U.S. Currency,*

    591 F.3d 402 (5th Cir. 2009) ……...................................................................8

*United States v. SCRAP,*

    412 U.S. 669 (1973) …………………………………………………..13

*Warth v. Seldin,*

    422 U.S. 490 (1975) …………………………………………………...8, 9


**Statutes:**

5 U.S.C. § 702 ……………………………………………………….........25-26

5 U.S.C. § 706 …………………………………………………….................5

21 U.S.C. § 360bbb-3 ……………………………………………...............3-4

28 U.S.C. § 1291 …………………………………………………………...1

28 U.S.C. § 1294 …………………………………………………………...1

28 U.S.C. § 1331 …………………………………………………………...1

28 U.S.C. § 1361 …………………………………………………………...1

Texas Family Code §32.101 …………………………………………...15-16

///

**Rules:**

Federal Rules of Appellate Procedure

- Rule 3
.......................................................................................1
- Rule 4
.......................................................................................1

# JURISDICTIONAL STATEMENT

The basis for subject-matter jurisdiction by the lower court below, the U.S. District Court for the Western District of Texas, Waco Division (the "District Court"), was 28 United States Code ("U.S.C."), Sections 1331 and 1361. The underlying action arises out of the acts of the United States Food and Drug Administration and its acting commissioners, Janet Woodcock and Robert Califf (collectively "FDA" or "Appellees") under 21 U.S.C. § 360bbb-3, FDA's authorization for medical products for use in emergencies, and the Administrative Procedures Act, 5 U.S.C. §§ 500, *et seq*.

This Court of Appeals has jurisdiction to hear this appeal under 28 U.S.C. §§ 1291 and 1294, as it is an appeal of a final order or judgment that disposes of all parties' claims, pursuant to the District Court's entry of an Order Granting Defendants' Motion To Dismiss entered January 12, 2023 (the "Order of Dismissal"). Record on Appeal ("ROA").35.1-16.

This appeal is timely because Appellants filed a Notice of Appeal with the District Court on March 3, 2023, less than 60 (sixty) days after entry of the Order of Dismissal, in compliance with the Federal Rules of Appellate Procedure, Rules 3 and 4. ROA.36.1.

///

# STATEMENT OF THE ISSUES

1.      Whether the Order of Dismissal should be vacated on the grounds the District Court erred by finding that associational standing was insufficiently alleged in Appellants' pleadings?

2.      Whether the Order of Dismissal should be vacated on the grounds the District Court erred by finding that Appellants had insufficiently alleged organizational standing by CHD in its own right?

3.      Whether the Order of Dismissal should be vacated on the grounds the District Court erred by ruling that Appellants had insufficiently alleged an actionable procedural violation under the APA?

# STATEMENT OF THE CASE

This case asks one basic question: in the critical context of mandated vaccines, is the FDA above the law? For example, can FDA use its emergency power to push dangerous biologics on minors, mislabel and misbrand them to the public, with the express knowledge that their mislabeling would lead to them being coercively administered to children and infants as young as 6 months old? The District Court ruled yes, finding that the FDA cannot be sued by citizens and is beyond judicial review for any of its actions in this context.

Appellants ask this Court to vacate and reverse the Order of Dismissal. ROA.35.1-16. The grounds asserted by the District Court to support the Order of Dismissal, was its finding that all plaintiffs lacked standing to sue FDA, and therefore the Appellants lacked Article III standing to bring the claims alleged in Appellants' Amended Complaint filed July 1, 2022 (the "Amended Complaint"). ROA.35.16[1]. Upon that finding, the District Court granted Appellees' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim filed on July 29, 2022 (the "Motion to Dismiss").

Section 564 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb- 3, authorizes the FDA to issue an Emergency Use Authorization ("EUA") for a biologic under certain emergency circumstances, allowing a product to be introduced and administered to the public even when it has not gone through the normal review process necessary for approval and licensure. ROA.26.8 (¶28). In an emergency, the Secretary of Health and Human Services may issue EUAs if it concludes that the following facts exist: (1) a serious or life-threatening disease; (2) a product "may be effective" in treating or preventing it; (3) "no adequate, approved, and available alternative to the product for diagnosing, preventing, or

---

[1] The District Court declined to rule on any of the other issues raised in Appellees' Motion to Dismiss, including whether Appellees were entitled to sovereign immunity and whether the Amended Complaint failed to state a proper claim. ROA.35.1 and 35.16.

treating such disease or condition;" (4) a risk-benefit analysis that measures both the known and potential benefits of the product against the known and potential risks of the product is positive; and (5) that the patient's option to accept or decline the product is protected through informed consent. 21 U.S.C. § 360bbb-3(c)(1)-(5). ROA.26.8 (¶29).

On March 27, 2020, the Secretary of the Health and Human Services determined that "circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic." ROA.35.2. In December 2020, FDA issued EUAs for the COVID-19 vaccines produced by Pfizer-BioNTech and ModernaTX, Inc. *Ibid.* On October 29, 2021, FDA revised the EUA to authorize administration of the Pfizer vaccine to children ages five to eleven. *Ibid*. On June 17, 2022, the FDA further revised the EUA to authorize the administration of the Pfizer vaccine to children ages 6 months to 4 years. *Ibid.* The FDA states on its website that "there is an option to accept or refuse receiving the vaccine." *Ibid*. The FDA also states that "[s]hould you decide for your child not to receive it, it will not change your child's standard medical care." *Ibid.*

Appellant Children's Health Defense ("CHD") filed a 19-page Citizen Petition with the FDA in May 2021 (the "Citizen Petition"), asking FDA to revoke the existing EUAs for the COVID-19 vaccine. ROA.35.2. FDA provided a 52-page

response to CHD's Citizen Petition several months later, rejecting CHD's demand that the EUAs be revoked. *Ibid*.

Approximately five months later, on January 24, 2022, Appellants filed the underlying action. ROA.35.2. On July 1, 2022, Appellants filed the Amended Complaint, alleging that FDA violated the Administrative Procedures Act under 5 U.S.C. §706(2), *et seq.* (the "APA"). *Id.,* at ROA.35.3. Appellees subsequently filed the Motion to Dismiss, based on, among other grounds, alleged lack of subject matter jurisdiction because Appellants lacked Article III standing. *Ibid.*

The District Court heard the Motion to Dismiss on November 18, 2022 and granted it, dismissing Appellants' entire action on the grounds the Amended Complaint failed to sufficiently allege that any of the Appellants had standing to sue FDA. *Id.,* at ROA.35.10. The District Court's sole grounds for granting Appellees' Motion to Dismiss was its finding that Appellants' Amended Complaint insufficiently pled the "injury in fact" element of Article III standing. *Ibid.* The District Court declined to make any findings as to the other Article III standing elements of causation and redressability. *Ibid.* Nor did the District Court make any findings or rulings as to any other grounds for dismissal argued by Appellees in their Motion to Dismiss. *Ibid.*

/ / /

# SUMMARY OF THE ARGUMENT

This case is about the FDA's misuse and misappropriation of emergency powers to market an unsafe, dangerous biologic to little children in order deny them informed consent. The Constitution intended courts to address precisely this kind of case or controversy.

The FDA claims it is above the law and denies any remedy to children aged 6 months to eleven years (including those in foster care), from its arbitrary and capricious authorization of COVID -19 injections. The Constitution embraces judicial review of this extraordinarily consequential agency action as a cognizable case or controversy. Indeed, for the Constitution's tripartite system of checks and balances to function, this Court is vested with the precise power to recognize Appellants' injuries that have arisen from inadequate agency review and decision making, and subsequent false advertising of COVID-19 shots. The injuries Appellants suffered include their inability to rely on FDA marketing any longer; resultant health uncertainty for their children; risk of involuntary childhood injection of dangerous biologics; and enormous costs to CHD to correct FDA's misinformation. The FDA's marketing of these biologics is not an "emergency use authorization" power even if they disguise it as such.

The District Court's Order of Dismissal must be vacated because Appellants have Article III standing to bring the relief requested in their Amended Complaint

under the APA. The District Court erred upon no fewer than three grounds. First, it erred by finding that associational standing was insufficiently alleged because no individual Appellant had suffered the "injury in fact" element of Article III standing. Second, it erred by finding that Appellants had insufficiently alleged organizational standing by CHD in its own right. Third, the District Court erred by ruling that Appellants had insufficiently alleged an actionable procedural violation under the APA. All three of these rulings are separately and independently reversible as a matter of law.

If the Order of Dismissal is permitted to stand, then effectively no check to the FDA's authority exists. No organization, no individual, no court can question or even review FDA actions –no matter how arbitrary or dangerous. Moreover, if this Court of Appeals does not vacate the District Court's dismissal of the entire action at the pleading stage on lack of Article III standing grounds, then the judiciary effectively has no authority to review, much less check, the actions of the executive branch in an arena as far reaching and important as vaccines mandated upon the public, including young children and infants. This is not what Congress enacted the APA to permit. This is not what judicial precedent holds. The District Court's granting of Appellees' Motion to Dismiss must be reversed and the Order of Dismissal vacated. The least protected, most vulnerable lives of children and infants in this country depend on it.

# ARGUMENT

## I.    STANDARD OF REVIEW

### A.    *De Novo* Review Applies

In *United States v. $500,000.00 in U.S. Currency,* 591 F.3d 402, 404 (5th Cir. 2009), this Court held: "This court reviews questions of standing de novo. [citing *Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.,* 455 F.3d 500, 502 (5th Cir. 2006)]." Here, the District Court entered its Order of Dismissal on the following grounds: "The Court concludes that all Plaintiffs lack standing to sue." ROA.35.16. Accordingly, review of the Order of Dismissal is *de novo* since the District Court's dismissal was entirely upon the grounds it lacked subject matter jurisdiction because Appellants lacked constitutional standing.

### B.    The Allegations Of Appellants' Pleadings Are Assumed True For Purposes Of Reviewing Article III Standing

In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-562 (1992) ("*Lujan*"), the Supreme Court held: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' [citation].". *See also Warth v. Seldin,* 422 U.S. 490, 501-502 (1975) ["For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material

allegations of the complaint, and must construe the complaint in favor of the complaining party."]; *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 110 (1979) ["Although the complaints are more conclusory and abbreviated than good pleading would suggest, construed favorably to [plaintiff] they allege that this conduct [satisfies Article III standing]."].

That same principle of judicial review applies here, since the District Court's dismissal was based on Appellees' Motion to Dismiss on the pleadings. ROA.35.6 ["When considering standing at the motion-to-dismiss stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice' and the court presumes that 'general allegations embrace those specific facts that are necessary to support the claim.' [citing *Lujan, supra*, 504 U.S. at 561]."].

## II. THE DISTRICT COURT ERRED IN FINDING THAT APPELLANTS' AMENDED COMPLAINT DID NOT SUFFICIENTLY ALLEGE ARTICLE III STANDING

A party can have standing in one of two ways (or both), either as the representative of its members, or on its own behalf because it has suffered a palpable injury as a result of the defendants' actions. *Hunt v. Washington State Apple Advertising Com'n,* 432 U.S. 333, 341 (1977); *Warth v. Seldin,* 422 U.S. 490, 511 (1975). Three basic elements must be satisfied for standing to exist: "First, the plaintiff must have suffered an 'injury in fact' … [citations]; Second, there must be a causal connection between the injury and the conduct complained

of - … [citations]; Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' [citation]." *Lujan, supra,* 504 U.S. at 560-561.[2]

### A.    **Appellants' Pleading Sufficiently Alleged Injury In Fact For Purposes Of Associational Standing**

The sole and exclusive basis for the District Court's dismissal of Appellants' action on the pleadings, was its finding that the Amended Complaint insufficiently alleged the injury in fact element of Article III standing:

> "The individual Plaintiffs merely allege a speculative threat of harm from vaccination by a non-parent or impending vaccine mandates." (ROA.35.9); "Because the applicable state laws prevent mandatory vaccination and vaccination without parental consent, the individual Plaintiffs have failed to allege a substantial risk that injury will occur." (ROA.35.10); and "[W]ith respect to the Shours, … Plaintiff ha[s] failed to show that there is a substantial risk that the Shours will move to a state with a vaccination mandate that will require the Shour children to be vaccinated to participate in certain activities." (ROA.35.10).

The District Court erred in ruling that Appellants insufficiently pled the "injury in fact" element of associational standing. The recent decision in *Booth v. Bowser,* 597 F. Supp. 3d 1, 7 (D.D.C. 2022) ("*Booth*") is instructive, because it involves COVID-19 vaccination issues with circumstances parallel to those at issue here. In *Booth*, parents filed various constitutional challenges to the District

---

[2] Again, for purposes of this appeal regarding the individual Appellants' standing, only the "injury in fact" element of Article III standing is at issue. *See, supra,* at pg. 5 above.

of Columbia's Minor Consent for Vaccinations Act Amendment of 2020 (the

"MCA"), which the Council of the District of Columbia passed. The MCA

permitted certain minor children to receive a vaccine without parental consent. One

of the *Booth* families had a 13-year-old child who attended Kipp Academy, a D.C.

public charter school, and who had not submitted to the COVID-19 vaccine

permitted by the MCA. The parents of that child alleged that, despite the fact their

child had not yet submitted to a vaccination, the District had nevertheless created:

"[a] pressure-cooker environment, enticing and psychologically manipulating

[their minor children] to defy their parents and take vaccinations against their

parents' wills." *Booth, supra,* at *4. The District argued that the *Booth* parents'

alleged injury "depends on 'pure speculation' that [their child] will receive the

vaccine", and further "The District argues that because Booth's alleged injuries

depend on the independent actions of third parties – both [their child] and

healthcare providers – his claims are too speculative to constitute an imminent

injury." *Id.,* at *5.

The *Booth* court held the plaintiff parents nevertheless had Article III

standing: "To be sure, Booth engages in some hypothesizing about what [their

child] will do. … But here [the child] has made it clear that he is on the cusp of

getting vaccinated." *Id.,* at *6. The *Booth* court concluded by holding that the

parents had sufficiently pleaded that the "'threatened injury" was "certainly

impending to constitute injury in fact,'" *Ibid.* (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013).) The *Booth* court thus ruled that the plaintiff parents had pled injury-in-fact despite that the imminent threat of vaccination absent their consent would have been administered by a third party, Kipp Academy public charter school, and not the Council of the District of Columbia that actually passed the MCA. *Booth, supra,* at *5.

Court decisions prior to *Booth* also consistently hold that Article III standing may be found where a government agency like the FDA presents imminent risk of harm in circumstances similar to the allegations made in Appellant's Amended Complaint. For example, in *Baur v. Veneman*, 352 F.3d 625 (2nd Cir. 2003), the court held that exposure to potentially harmful products by government agencies like FDA, is in and of itself a remedial injury that comprises a Constitutionally cognizable case or controversy. *See also Ctr. for Food Safety v. Price*, No. 17-CV-3833 (VSB), 2018 WL 4356730, *6 (S.D.N.Y. Sept. 12, 2018).

Additionally, agency actions that increase health-related uncertainty constitute a remediable injury for standing purposes as well. *New York Public Interest Research Group v. Whitman*, 321 F.3d 316 (2nd Cir. 2003). Courts also hold that impairing a parent's medical control over her children's care constitutes a Constitutionally cognizable case or controversy. *See, e.g.*, *Tummino v. Torti*, 603 F.Supp.2d 519 (E.D.N.Y. 2009).

Finally, federal courts allow consumers to bring suit against the FDA

specifically, when that government agency has "increased the risk that they will

purchase and consume unsafe or ineffective drugs." *Cutler v. Kennedy,* 475

F.Supp. 838 ("*Cutler*") (D.D.C.1979). In *Cutler,* the court noted that the focus of

the standing inquiry where the FDA is alleged to have increased the risk of harm,

is on the "fact, and not the amount or severity, of the injury." *Id.,* at 848. The

*Cutler* court further held:

> "[I]f, as the plaintiffs contend on the merits, the FDA is authorizing
> drugs to be marketed in violation of the [FDCA], it has ***increased the
> risk*** that plaintiffs will be exposed to unsafe or ineffective drugs by
> depriving them of regulatory protection which the statute accords all
> drug consumers. ***This risk and deprivation itself constitutes a distinct
> and palpable injury to plaintiffs' statutory interests as drug
> consumers***." (emphasis added) *Cutler, supra,* 475 F.Supp. at 848-
> 849.[3]

The District Court's findings relied upon to support dismissal of Appellants'

claim on the pleadings, are directly at odds with the above authority and thus

cannot stand. First, every one of the individual parent Appellants has children who

are directly threatened by FDA's authorizations and the false advertising of its

EUAs. Further, FDA's alleged misrepresentations regarding the safety of their

EUAs have led to continuous and even daily coercion, propaganda, and

---

[3] *See also: United States v. SCRAP*, 412 U.S. 669, 688-89 & n.14 (1973); *Animal Legal Def. Fund v. Azar*, No. 20-CV-03703-RS, 2021 WL 4477901, *3 (N.D. Cal. Feb. 23, 2021).

advertisements aimed directly at those children. For example, Appellant Deborah Else attests to enduring vaccine propaganda from school administrators and pediatricians aimed directly at her children. ROA.26.35. Attached to the Amended Complaint is also Appellant Sacha Dietrich's declaration under oath that her children experience constant harassment from directives and pressure to receive the COVID-19 biologic from the media and other children. ROA.26.4 (¶19).

Additionally, Appellants' children have repeatedly and continually faced the unrelenting and looming threat of being pushed out of society as the culture of mass vaccination and medical mandates, now directed at children as young as 6 months, continues as a result of FDA's issuance of EUAs that violate the APA, as alleged in the Amended Complaint. For example, the federal government recently mandated that all students attending public or private schools be fully vaccinated for COVID-19 for the 2022-2023 school year. As another example, on June 28, 2022, Sesame Workshop released a video on the Sesame Street YouTube channel announcing that Elmo had gotten the COVID-19 vaccine for the first time, sending children the message: "you'll get sick if you don't take the COVID-19 vaccine."[4] ROA.26.36 (¶129).

---

[4] Sesame Street: Elmo Gets the COVID-19 Vaccine, *Sesame Street,* available at https://www.youtube.com/watch?v=bwimt9n2JEk

Moreover, for the Texas based Appellants, Deborah Else and Sacha Dietrich, state law and policy puts their children in imminent risk of being injected with FDA's vaccine against their parents' wishes. This is due to the fact that under certain circumstances the applicable provisions of the Texas Family Code expressly provide that any number of persons (and even non-persons) other than a child's parents may indeed provide consent to be injected with the EUAs at issue. Such non-parental persons and entities include but are not limited to a child's guardian, a non-parental family member, a stepparent, any adult in actual care of the child, and even an educational institution or a court of law.[5] ROA.2.31-32 (¶112, fn 54)[6].

---

[5] Of note, Waco County's consent form requires only an unspecified adult's signature for vaccination. ROA.26-3.39-40 (Exhibit 12).

[6] The relevant provisions of Section 32.101 of the Texas Family Code are as follows: "the following persons may consent to the immunization of a child: ¶ (1) a guardian of the child; and ¶ (2) a person authorized under the law of another state or a court order to consent for the child. ¶ (b) If the persons listed in Subsection (a) are not available and the authority to consent is not denied under Subsection (c), consent to the immunization of a child may be given by: ¶ (1) a grandparent of the child; ¶ (2) an adult brother or sister of the child; ¶ (3) an adult aunt or uncle of the child; ¶ (4) a stepparent of the child; ¶ (5) an educational institution in which the child is enrolled that has written authorization to consent for the child from a parent, managing conservator, guardian, or other person who under the law of another state or a court order may consent for the child; ¶ (6) another adult who has actual care, control, and possession of the child and has written authorization to consent for the child from a parent, managing conservator, guardian, or other person who, under the law of another state or a court order, may consent for the child; ¶ (7) a court having jurisdiction of a suit affecting the parent-child relationship of which the minor is the subject; ¶ (8) an adult having actual care,

As such, the District Court erroneously found that:

"The FDA's EUAs do not put the individual Plaintiffs at an imminent risk of exposure because parents are free to choose whether to consent to their children receiving the COVID-19 vaccine. … FDA has stated 'there is an option to accept or refuse receiving the vaccine.'." ROA.35.11.[7]

Thus contrary to the District Court's findings otherwise, the plain language of Section 32.101 of the Texas Family Code allows for nearly any family member other than the child's parents, a friend or other adult childcare provider, and even an educational institution or court in certain circumstances – to have the power to authorize the very EUA medical treatment that parents are misleadingly lead to believe by FDA's website that they have unilateral authority over. The Texas Appellants thus possess a legally cognizable injury in fact that arises from their justifiable fear that their children can be vaccinated without their consent.

In addition, Appellants Jonathan and Rebecca Shour, residents of North Carolina presently, are at imminent risk of harm as a result of FDA's EUA. The

---

control, and possession of the child under an order of a juvenile court or by commitment by a juvenile court to the care of an agency of the state or county;  or ¶ (9)  an adult having actual care, control, and possession of the child as the child's primary caregiver."

[7] For the same reasons, the following finding in support of the District Court's dismissal was reversible error: "Because the applicable state laws prevent mandatory vaccination and vaccination without parental consent, the individual Plaintiffs have failed to allege a substantial risk that injury will occur." ROA.35.10.

Navy can relocate Chaplain Shour and his family around the country at a moment's notice and the family thus has no say as to their location at any given time. Upon being stationed in a state that implements COVID-19 vaccine mandates such as the EUAs issued by FDA, the Shour children face discrimination and ostracization from certain activities because of their vaccination status in the very manner discussed above ROA.26.36 (¶130).

The Order of Dismissal unsuccessfully attempted to distinguish some (but not all) of the case law cited by Appellants in opposing the Motion to Dismiss.[8] The District Court found that *Baur* was distinguishable because: "In *Baur,* the plaintiff provided ***data*** showing that the threat of harm arising from the agency action … was confirmed by the agency's ***research***." (emphasis added) ROA.35.10. It went on to distinguish *Whitman* on the grounds that in that case: "the court focused on the fact that the plaintiff's members lived near facilities that ***may be releasing*** excess pollutants, which presented specific personal and economic harms." (emphasis added) ROA.35.11. However, in doing so, the District Court imposed a rigorous evidence-driven standard for alleging standing at the pleading

---

[8] Notably, the District Court's Order of Dismissal did not mention, much less discuss, much less distinguish, the *Cutler* case cited in Appellants' opposition to the Motion to Dismiss. This is particularly concerning since as discussed above, the *Cutler* case held that a plaintiff shows a palpable injury to its statutory interests strictly by way of the increased risk and deprivation of protection from harm by the FDA specifically. *Cutler, supra,* 475 F.Supp. at 838, 848-849.

stage (i.e. "data" and "research" in *Baur* and proximity to facilities that "***may*** be releasing excess pollutants" in *Whitman*). Such an over-strict standard is neither practical in application at the pleading stage nor supported by any judicial authority.

Finally, the Order of Dismissal erroneously found that: "Here, the FDA, and relevant state laws, provide parents the choice of whether to consent to their children receiving the vaccines authorized by the FDA's EUAs.". ROA.35.11. The District Court went on to cite a case cited by Appellants – *Tummino v. Torti,* 603 F.Supp.2d 519, 540 (E.D.N.Y. 2009) – in support of said finding. *Ibid*. However, the body of authority above makes clear that a cognizable injury in fact may indeed exist for standing purposes, where the actions of a government agency render a parent's child "on the cusp of getting vaccinated." (*Booth, supra,* 597 F. Supp. 3d at *6, expose a plaintiff to potentially harmful products (*Baur, supra,* 352 F.3d at 625), increase health-related uncertainty (*Whitman, supra,* 321 F.3d at 316) and/or impair a parent's medical control over their children's care (*Tummino, supra,* 603 F.Supp.2d at 519).

In sum, the overly-narrow standard imposed by the District Court – that injury in fact can only exist if the FDA explicitly mandates that all parents have their children vaccinated whether they consent or not (and/or state laws at issue do the same) – erroneously strays from the "fact, and not the amount or severity, of

the injury" standard established in *Cutler, supra,* 475 F. Supp., at 848. The

interpretation of the relevant authority relied upon by the District Court in entering

its Order of Dismissal was therefore erroneous, and this Court of Appeal should

reverse the District Court's Order because Appellants' have sufficiently pled

associational standing under Article III.

### B.    Appellants' Pleading Sufficiently Alleged Organizational Standing By CHD In Its Own Right

An organization has Article III standing in its own right (as opposed to suing

as a representative of its members), if it is able to allege injury to its organizational

activities and a consequent drain on its resources. In *Havens Realty Corp. v.

Coleman,* 455 U.S. 363, 378 (1982), the Supreme Court held that an organization's

pleading sufficiently meets Article III standing where it alleges a "concrete and

demonstrable injury to the organization's activities – with the consequent drain on

the organization's resources - …" In *El Rescate Legal Services, Inc. v. Executive

Office of Immigration Review,* 959 F.2d 742 (9th Cir. 1991), the Ninth Circuit held

that sufficient injury to the organization's activities was shown where the

government agency's policy frustrated its goals and diverted resources in a manner

the plaintiff organization would have otherwise expended:

> "[T]he organizations involved in the present case were established to
> assist Central American refugee clients, … in their efforts to obtain
> asylum and withholding of deportation in immigration court
> proceedings. The allegation that the [defendant government agency]'s
> policy ***frustrates these goals and requires the organizations to***

> ***expend resources in representing clients they otherwise would spend
> in other ways*** is enough to establish standing. [citing *Havens Realty,
> supra,* 455 U.S. at 379.]." (emphasis added) *El Rescate, supra,* 959
> F.2d at 748.

The expenses associated with investigating the defendant to determine

whether litigation is to be pursued, is another judicially recognized injury to the

organization's activities conferring Article III standing. In *Hooker v. Weathers,*

990 F.2d 913, 915 (6th Cir. 1993), the court held that standing in its own right

existed as to an organizational plaintiff, the Fair Housing Contact Service[9]. The

*Hooker* court found that organizational standing existed because the organization

devoted resources to investigating the defendant trailer park's practices and alleged

in its pleading that it had confirmed that the defendants discriminate on the basis of

familial status. *Ibid.*

Similarly, in *Online Merchants Guild v. Cameron*, 995 F.3d 540 (6th Cir.

April 29, 2021), the court reviewed the standing of a merchant guild to challenge

Kentucky's price-gouging laws designed to curb online merchants from taking

advantage of fear and uncertainty of consumers amidst the COVID-19 pandemic.

The *Online Merchants* court held that the merchant guild plaintiff demonstrated a

sufficient drain on its resources to grant standing in the organization's own right.

In so holding, the Sixth Circuit explained that a drain on organizational resources

---

[9] The Fair Housing Contact Service was an organization that worked to eliminate
discriminatory housing practices.

sufficient to trigger associational standing in its own right exists where the

challenged government conduct results in investigation, analysis and discussion

within the organization on how to respond:

> "[T]he Guild has 'expend[ed] organizational resources in response to the … ***investigation' by working with members on how best to respond … analyzing 'the complex web of investigations,' and 'discuss[ing] open questions with merchants*** who … are confused and concerned about what they can and cannot sell online.' [citations omitted]" (emphasis added) *Id.,* at 548.

Decisions of other Circuit Courts affirm application of this same standard for

purposes of determining an organization's standing in its own right under Article

III where its pre-litigation efforts to evaluate and challenge government acts results

in a drain on the organization's resources. For example, in *Maya v. U.S. Dept.*

*Homeland Security*, 975 F.3d 120, 129-130 (2nd Cir. 2020), the Second Circuit

recently held that the plaintiff organization had standing because it "has alleged a

'perceptible impairment' of its ability to help immigrants that is sufficiently

'concrete and particularized' to survive a motion to dismiss. [citations]." S*ee also*

*Spann v. Colonial Village, Inc.,* 899 F.2d 24, 27 (DC Cir. 1990); *Sierra Club v.*

*Marita,* 46 F.3d 606, 612-613 (7th Cir. 1995).

Here, as a direct result of FDA's actions, CHD had to undergo a complete

revamping of its budgeted plans, reverse course entirely on its public educational

focus, conduct massively detailed inquiries regarding the health risks to young

children and infants, incur unprecedented expense to educate the public on the

risks the FDA failed to inform them of, and find completely new means of communication with the public regarding the risks of FDA's EUAs on young children and infants. Specific CHD resources were diverted and drained by FDA's conduct at issue include, among other things:

(i)     CHD devoted resources over the course of 18 months before filing the subject civil action to investigating FDA's actions, including FDA's involvement in safety and efficacy studies, clinical trial oversight, interpretation of data, misrepresentation of data, rationale for authorization and approval of COVID-19 related biologics, abuse of emergency powers, and public statements and advertising of such biologics;

(ii)    CHD worked with its members to address coercion and pressure to vaccinate, as well as discrimination that members and their families face. CHD has numerous members and employees whose children fall within the age cohorts that the FDA now authorizes to receive the EUAs; and

(iii)   CHD worked through its newsletters, online video news platforms, and live commentary to educate the public with real information necessary to satisfy *informed* consent and combat the misinformation that the FDA and CDC continue to promote regarding the EUAs. ROA.26.42-43 (¶¶ 152-157).

Finally, CHD's resources were diverted and drained well over and above the aforementioned, in that CHD issued the Citizen Petition on May 16, 2021 (eight

months before the underlying civil action was filed). The Citizen Petition

demanded that FDA revoke the existing EUAs for the COVID-19 vaccine because,

among other reasons, FDA did not follow proper procedure, including those set

forth by the APA. ROA.26-3.41-60*; see also:* ROA.35.2. On its face, CHD

personnel – including but not limited to Meryl Nass, M.D. (Scientific Advisory

Board member) and Robert F. Kennedy, Jr. (then Board Chair and Chief Litigation

Counsel) – devoted countless hours of work and effort to CHD's 19-page Citizen

Petition, requesting that the FDA revoke the EUA for existing COVID-19 vaccines

and refrain from approving and licensing them. *Ibid.* Additionally, the Citizen

Petition assembled and memorialized a tremendous amount of detailed factual

findings and research regarding the risks to public health and safety, effectiveness

of vaccines (or rather lack thereof), the FDA's misbranding of the vaccine

authorizations, and the serious injuries and consequences spawned by the FDA's

actions upon the public. *Ibid.*

Subsequently, on August 23, 2021 (five months before the underlying civil

action was filed), FDA sent CHD a response to the Citizen Petition, rejecting all of

CHD's requests. ROA.26-3.61-114*; see also:* ROA.35.2. After additional hours

reviewing the FDA's 52-page denial response to the CHD's Citizen Petition,

conferring with its members, experts and counsel, CHD then filed the civil suit that

gave rise to this appeal.

The District Court erroneously relied on this Court's decision in *NAACP v. City of Kyle,* 626 F.3d 233 (5ᵗʰ Cir. 2010) ("*City of Kyle*"), to find that: "Here, CHD has similarly failed to show how its efforts in response to the FDA's EUAs differ from its ordinary activities." ROA.35.15-16. However, in denying organizational standing to the plaintiff in *City of Kyle*, this Court focused on the plaintiff organization's activities being no different than its routine lobbying activities comprised of examining and communicating about developments in the zoning ordinances at issue in that case: "Plaintiffs have only conjectured that the resources that the HBA had devoted to the revised ordinances could have been spent on other unspecified HBA activities." *City of Kyle, supra,* 626 F.3d at 238-239. Here, by contrast, the resources expended by CHD as a result of FDA's EUAs (*supra,* at pp. 21-23 above), are undisputedly resources it would not have expended if FDA hadn't violated the APA by issuing the EUAs. Further, all of the above-mentioned consequences of FDA's conduct culminated in CHD being required to not just expend its limited resources to investigate, analyze and meaningfully discuss FDA's EUAs, but further forced CHD to seek and obtain new funds for the extraordinary expenses FDA caused by issuing the subject EUAs. As such, the CHD had Article III standing in its own right.

///

**C. Appellants' Pleading Sufficiently Alleged A Statutory Violation Under The APA For Article III Standing Purposes**

A third ground for this Court of Appeal to reverse the dismissal of the subject action by the District Court, is that the District Court erroneously found that Appellants' Amended Complaint alleged a "bare procedural violation" under the APA, insufficient to confer Article III standing. ROA.35.15-16. This ruling was reversible error as well.

Precedent holds that Article III standing is often broader, where a given plaintiff's claim arises from a statutory cause of action created by Congress, such as the APA. For example, in *Linda R.S. v. Richard D.* 410 U.S. 614, 616-617 (1973), the Supreme Court held that: "Recent decisions by this Court have greatly expanded the types of 'personal stake(s)' which are capable of conferring standing on a potential plaintiff." *See also: Massachusetts v. EPA,* 549 U.S. 497, 517-518 (2007). Accordingly, the standing standard for plaintiffs bringing procedural violation actions arising from statute is inherently broad. The Ninth Circuit articulated this standard succinctly in *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008): "Plaintiffs alleging procedural injury 'must show only that they have a procedural right that, if exercised, ***could*** protect their concrete interests'. [citation]." (emphasis original)

Under the APA specifically, Article III standing is granted to any: "person suffering legal wrong because of agency action, or adversely affected or aggrieved

by agency action within the meaning of a relevant statute, ….” 5 U.S.C. § 702. In

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014)

(“*Lexmark*”), the Supreme Court held that a “zone of interests” standard applied

where the standing of plaintiffs alleging procedural claims such as the APA is

involved. *Lexmark* held that standing to bring statutory claims created by Congress

extends to any plaintiff whose interests: “fall within the zone of interests protected

by the law invoked.” *Id.,* at 129-130. The *Lexmark* court further held that, in

determining standing to bring claims for APA violation “the test is not ‘especially

demanding,’”, and: “the benefit of any doubt goes to the plaintiff” because the

zone-of-interests test:

> “forecloses suit only ***when a plaintiff's interests are so marginally
> related to or inconsistent with the purposes implicit in the statute
> that it cannot reasonably be assumed that Congress authorized that
> plaintiff to sue***.” (emphasis added) *Id.,* at 130.

The Supreme Court went on to explain the public policy served by a broad

application to Article III standing in claims brought under the APA as follows:

> “That lenient approach is an appropriate means of preserving the
> flexibility of the APA's omnibus judicial-review provision, which
> permits suit for violations of numerous statutes of varying character
> that do not themselves include causes of action for judicial review.”
> *Lexmark, supra,* 572 U.S. at 130.[10]

---

[10] The broad judicial approach to Article III standing has been exemplified in other
contexts as well. For example, in *Broadrick v. Oklahoma,* 413 U.S. 601 (1973), the
Supreme Court held that litigants are permitted to challenge government action
restricting First Amendment rights: “not because their own rights of free
expression are violated, but because of a judicial prediction or assumption that the

The District Court found that Appellants' Amended Complaint insufficiently alleged a procedural violation under the APA, because the harm alleged amounted to a mere generalized grievance: "The procedural harm allegedly suffered by CHD is not concrete and particularized to CHD – it is the same procedural harm suffered by the public at large." ROA.35.15-16. This ruling was erroneous, because the District Court applied an overly-narrow standard to Appellants' procedural injury claim under the APA.

Namely, the District Court failed to determine whether or not it could reasonably be assumed that Appellants' claim was so marginally related to or even inconsistent with the purposes implicit under the APA, that Congress had clearly not authorized a plaintiff such as Appellants to sue FDA. As discussed above, the individual Appellants sufficiently alleged that they suffered cognizable injury in fact to merit Article III standing. *Supra,* at pp. 10-19 above. Further, Appellant CHD sufficiently alleged that its resources were diverted and drained to merit organizational standing in its own right. *Supra,* at pp. 19-24 above. In light of the fundamentally broader standing standard occasioned by Appellants' statutory claims under the APA discussed in this section, the District Court's Order of Dismissal is that much more amenable to reversal by this Court of Appeal.

---

statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.,* at 612.

# CONCLUSION

For the reasons set forth above, this Court of Appeal should vacate and reverse the

District Court's Order of Dismissal.


Dated: May 16, 2023                    Respectfully submitted,

                                       /s/ Robert E. Barnes
                                       Robert E. Barnes, Esq.
                                       Email: robertbarnes@barneslawllp.com
                                       BARNES LAW
                                       700 South Flower Street, Suite 1000
                                       Los Angeles, California 90017
                                       Telephone: (310) 510-6211

                                       Attorneys for Plaintiffs-Appellants
                                       Children's Health Defense; Deborah L. Else;
                                       Sacha Dietrich; Aimee Villella McBride;
                                       Jonathan Shour and Rebecca Shour

# CERTIFICATE OF SERVICE

I certify that on May 16, 2023, the foregoing BRIEF OF APPELLANTS CHILDREN'S HEALTH DEFENSE, SACHA DIETRICH, DEBORAH ELSE, AIMEE MCBRIDE, JONATHAN SHOUR, AND REBECCA SHOUR was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record as follows:

Daniel Bentele Hans Tenny, Esq.
Email: daniel.tenny@usdoj.gov
U.S. Department of Justice, Civil Division
1100 L Street, N.W.
Poc Agostino, Jean
Washington, DC 20530
*Attorneys for Appellees Food & Drug Administration and Robert M. Califf*

Sean Janda
Email: sean.r.janda@usdoj.gov
U.S. Department of Justice, Appellate Section, Room 7260
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
*Attorneys for Appellees Food & Drug Administration and Robert M. Califf*

/s/ Robert E. Barnes, Esq.
Robert E. Barnes, Esq.
Email: robertbarnes@barneslawllp.com
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, California 90017

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

This brief complies with the 13,000 word type-volume limit of FRAP 32(a)(7)(B)(i) and 6 Cir. 32(a) because, excluding the parts of the document exempted by FRAP 32(g) and 5th Cir. R. 32.3, this document contains 7,436 words.

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Times New Roman style font.


Dated: May 16, 2023                  /s/ Robert E. Barnes, Esq.
                                     Robert E. Barnes, Esq.
                                     Email: robertbarnes@barneslawllp.com
                                     BARNES LAW
                                     700 South Flower Street, Suite 1000
                                     Los Angeles, California 90017
                                     Telephone: (310) 510-6211

                                     *Counsel for Plaintiffs-Appellants*